## MEDFORD et al. v. FIRST NAT. BANK OF EVANT.

### No. 2797.

Court of Civil Appeals of Texas. Waco.

June 2, 1948.

Rehearing Denied June 24, 1948.

McMahon, Springer & Smart, of Abilene, for appellants.

Tom R. Mears and Byron L. McClellan, both of Gatesville, for appellee.

TIREY, Justice.

This is an appeal from an order overruling pleas of privilege (non-jury). The judgment of the trial court is assailed on two grounds: (a) that the controverting affidavit did not allege sufficient facts to show venue of the case against appellants in Coryell county; and (2) that the evidence is insufficient to show that the district court of Coryell county had venue of the alleged cause of action.

The First National Bank of Evant, Texas, a banking corporation, and a resident of Coryell county, Texas, brought this suit in the district court of said county against O. B. Gummelt, a resident of Ector county, Mills County Commission Company, a firm composed of Phil Ford, Sr., and Phil Ford, Jr., residents of Mills county, Texas, Floyd Medford, F. L. Medford and Clyde Manning, residents of Hamilton county, Texas. Plaintiff in its first amended petition made Clarence Bauman, a party defendant, and alleged his residence to be in Coryell county. Each defendant filed plea of privilege to be sued in the county of his residence, and in addition thereto Clarence Bauman alleged his residence to be Mills county and not Coryell County as alleged in plaintiff's petition. A controverting affidavit was filed in each instance and thereafter plaintiff announced that it dismissed defendants Clarence Bauman and F. L. Medford. The court sustained pleas of privilege filed by Phil Ford, Sr., and Phil Ford, Jr., and transferred the cause as to them to Mills county. The court overruled pleas of privilege filed by Floyd Medford and Clyde Manning. Gummelt filed no pleadings and made no appearance. The defendants Medford and Manning perfected their appeal to this court.

Pertinent to this discussion plaintiff in its first amended original petition alleged that defendant Gummelt, on November 7, 1944, executed and delivered his promissory note to the bank for $500.00, due June 7, 1945, payable to plaintiff at Evant in Coryell County, Texas; that in connection with said note said Gummelt gave a chattel mortgage on certain livestock duly

described therein; that on October 10, 1945, Gummelt renewed said note in the sum of $550.00, and to secure said renewal note executed a mortgage on certain livestock therein described and further alleged "said mortgage also securing all indebtedness due said bank, that said mortgage was duly filed and recorded in the Mortgage Records of Mills County, Texas, and was in full force and effect on the 24th day of June, 1946"; that on December 15, 1944, defendant Gummelt executed and delivered his note to the bank for the sum of $1700.-00, due March 15, 1945, and executed a chattel mortgage at this time to the plaintiff on "all my goats, hogs and farm equipment * * * together with increase of stock and to secure all the indebtedness due the plaintiff, and that on the 12th day of December, 1945, the said O. B. Gummelt renewed the balance of said $1700.00 note by executing his note for $1450.00 and at the time of the execution of said note executed a chattel mortgage and renewal on all my goats * * *," and other livestock and farm equipment specifically described, said livestock and equipment being located in Mills county and said mortgage being recorded in the Mortgage Records of Mills county. The bank further alleged that defendant Manning purchased 130 head of goats from Gummelt and now has said goats in his possession; that by reason of the execution and delivery of said note said Gummelt became liable and bound to the plaintiff; that he refused to pay plaintiff any part of said note, and that by reason of the purchase of said mortgaged goats by said Manning that the said Manning became liable and bound to plaintiff for the value of said goats, and that Manning had failed and refused to pay plaintiff for said goats, or any part thereof, to plaintiff's damage in the sum of the value of 130 goats, which is alleged to be $750.00; that on the 12th day of December, 1945, said Gummelt executed and delivered to plaintiff his promissory note for $1000.00, due June 9, 1946, payable to plaintiff at the First National Bank of Evant in Coryell county, which was in part a renewal note and to secure said note gave a mortgage on 208 ewes three to four years old, 37 mixed lambs (mixed spring lambs) together with all increase and wool grown thereon and located on the John Witty place four miles north of Center, Mills county, Texas, said mortgage securing all other indebtedness and each and all of said notes, and alleged that it was recorded in the Mortgage Records of Mills county, Texas; that defendant Floyd Medford purchased from Gummelt 73 head of said sheep covered by said mortgage and alleged that said sheep purchased by Medford to be worth $700.00, and that Medford sheared from said sheep wool of the value of $400.00, and by reason of the purchase of said mortgaged sheep said defendant Medford became liable and bound to plaintiff for the value of said sheep and for the value of the wool sheared after their purchase. Plaintiff further alleged in effect that after Gummelt became indebted to it as aforesaid and had executed and delivered his chattel mortgages as aforesaid, that the said Gummelt perpetrated a fraud on the plaintiff in that he disposed of the livestock covered by the foregoing mortgages without the knowledge or consent of the plaintiff, and that on July 9, 1946, he executed and delivered to the bank his note for $500.00, due January 1, 1947 in renewal of a part of said indebtedness; that on October 11, 1946, he executed and delivered to plaintiff a note for $1250.00, due March 15, 1947, which was in renewal of a part of Gummelt's indebtedness to the bank and on November 16, 1946, he executed and delivered to the bank another note for $1200.-00, due May 9, 1947, which was also in renewal of a part of Gummelt's indebtedness to the bank; that Gummelt in further perpetration of his fraud upon plaintiff induced plaintiff to accept renewal mortgages on livestock theretofore mortgaged to it (and sold by Gummelt to Manning and Medford without the bank's knowledge or consent) to secure the renewal notes evidencing his indebtedness to the bank, and that the fraud of Gummelt was well known to the other defendants herein but unknown to plaintiff bank and plaintiff says such fraud "did not as a matter of law relieve the said O. B. Gummelt of his indebtedness to the bank and the liability of the said defendants of the purchase of said mortgaged property as described in the

above mortgages and that this plaintiff relies upon his said notes and mortgages duly executed and recorded in Mills county previous to the date of the fraudulent renewal as above set forth." Plaintiff prayed that it have judgment against Gummelt for the full amount of the principal, interest and attorney's fees described and that he have a foreclosure of his chattel mortgage; that it have judgment against each and all of the other defendants for the value of the mortgaged property purchased by them and that it have foreclosure of the chattel mortgage against Clyde Manning, Floyd Medford, F. L. Medford and O. B. Gummelt and against Mills County Commission Company and Phil Ford, Sr., Phil Ford, Jr., and Clarence Bauman, and for orders of sale and for costs, and for all appropriate writs.

█ Appellee bank in its controverting affidavit to the pleas of privilege sought to hold venue in Coryell county by virtue of subdivision 5 of Art. 1995, and subdivision 29a of said Article, Vernon's Ann.Civ. Stats. The plaintiff in said affidavit also set out: "That this is a suit on a debt to foreclose a chattel mortgage securing said debt payable in Evant, Coryell County, Texas, which amended petition is referred to and adopted and made a part hereof * * *." We think that under the authority of Vinson v. Horton, Tex.Civ.App., 207 S.W.2d 432, 433, points 8 and 9, the trial court could look to the amended pleading in order to ascertain the nature of the suit. See also: Faught v. Cloud, Tex. Civ.App., 131 S.W.2d 137; A. H. Belo Corp. v. Blanton, 133 Tex. 391, 129 S.W.2d 619. The controverting affidavit set out specifically that its suit was grounded on three notes, one for $500.00, one for $1200.-00 and one for $1250.00, executed by Gummelt to the bank and payable to the bank in Evant, Coryell County, Texas, and that each and all of said notes were due, and that said notes were secured by chattel mortgage on cattle, hogs and sheep; that defendant Manning purchased from Gummelt the cattle described in the mortgage, said mortgages being payable in Coryell County, Texas, and suit being for judgment for a debt and foreclosure of the mortgages and the court having jurisdiction of the said Gummelt by virtue of said notes and mortgages and by reason of the defendant Manning purchasing said mortgaged cattle and converting them to his own use and benefit and in paying the said defendant Gummelt for said cattle, that the defendant Manning became bound to plaintiff for the value of said cattle or to the extent of plaintiff's debt. The controverting affidavit to the plea of privilege filed by Medford is substantially to the same effect.

Appellants rely on the doctrine announced by the Eastland court in the case of Southwestern Peanut Growers Ass'n v. Womack, Tex.Civ.App., 179 S.W.2d 371. We think that the case at bar can be distinguished from the foregoing case for the following reasons: In the Womack case the subject matter of the litigation was peanuts and plaintiff's suit was one for debt evidenced by a promissory note secured by chattel mortgage on peanuts. In that case it was not alleged that the non-resident defendant claiming his privilege had possession of any of the peanuts, nor that such defendant was asserting any claim to the same. In the case at bar the amended petition upon which the bank went to trial alleged in effect that Gummelt was indebted to it in a specific sum evidenced by certain notes and that he had executed chattel mortgages covering livestock fully described in said mortgages and expressly alleged that defendants Manning and Floyd Medford each had purchased a part of the stock secured by the respective mortgages and that the mortgages were on record in the county where the livestock was located at the time Medford and Manning purchased same, and that each of these defendants still had a part of the livestock so purchased in their possession. Our view is that plaintiff by its pleading and proof has brought itself within the doctrine announced by the Supreme Court in Pioneer Bldg. & Loan Ass'n v. Gray, 132 Tex. 509, 125 S.W.2d 284, because:

(A) Plaintiff tendered in evidence seven chattel mortgages executed by Gummelt to the Bank securing his indebtedness to the bank, which mortgages covered livestock and other personal property described in his amended pleading. The mortgages

introduced in evidence show that one mortgage secures the $1000.00 note described in the controverting affidavit, one secures the $1250.00 note described in the affidavit, and one secures a note for $533.30. There is nothing in the pleading and evidence to show that this last note is the $500.00 note referred to in the controverting affidavit, but we think that the failure of the pleading and evidence to identify this $533.30 note is not fatal to the plaintiff's case because the other indebtedness is described with certainty and each of the mortgages tendered in evidence has the following provision: "This conveyance, however, is intended as a mortgage to secure said bank, its successors and assigns, in the payment of said indebtedness due and owing by them evidenced by (then follows description of the note), as well as to secure the payment of all other indebtedness now owing said bank and any and all indebtedness to become owing to said bank, its successors or assigns or legal representatives, whether evidenced by note, overdraft, or otherwise, which said indebtedness now or hereafter owing it is agreed shall be paid to the order of said bank at its office in Evant, Texas * * *." Moreover, plaintiff tendered the notes in evidence only for the purpose of establishing the amount of the debt against Gummelt, and the court admitted such notes only for such purpose.

(B) The bank tendered its witness Evant Brooks, its President, who testified in part to the effect that he was President of the bank and that the bank was a resident citizen of Evant; that Gummelt was indebted to the bank in the amounts evidenced by the notes tendered in evidence and that these notes were secured on certain livestock and farm equipment described in the mortgages and that the mortgages were executed contemporaneously with the execution and delivery of the notes for the purpose of securing said indebtedness, and that they were placed of record in the office of the County Clerk of Mills county, where the livestock and personal property were located, and that the notes were past due and unpaid; that he had a conversation with Manning, one of the defendants in this case, and in the conversation Manning told him he had bought 100 goats from Gummelt; that he also had a conversation with the defendant Medford with reference to the purchase of some sheep from Gummelt; that the first conversation he had with Medford took place in the bank and Medford told him he had purchased 70 odd sheep from Gummelt and that he still had the sheep. On cross-examination he testified in effect that Manning told him he bought some goats from Gummelt and that Manning owned them. Brooks further testified in effect that Gummelt became indebted to the bank in 1944 and that such indebtedness was renewed from time to time as evidenced by the renewal notes and mortgages tendered in evidence.

Plaintiff's attorney tendered in evidence chattel mortgage marked Exhibit "E", and said in part: "That is the sheep that was sold to Medford. I will introduce the 1945 mortgage covering the sheep, bearing date 4th of December, 1945, and which describes the property as indicated * * *. We are only seeking to recover on the goats, and now introduce the mortgage dated 12th of December, 1945, Exhibit 'I' mentioned before and which description reads: 'All my goats, hogs, and farm equipment, 154 head of goats, mixed nannies and muttons, 1 to 4 yrs old, 1 Billie 2 years old.' That is for the purpose of showing the description of the goats Mr. Manning bought."

The general rule is: "It is never necessary for a venue fact to be proven with exact certainty, as in trial on the merits; prima facie proof being sufficient. If the evidence fairly raises the issue, a judgment may not be disturbed because the party on whom the burden rests may have established by other and better proof the controversial venue issue." See Clay v. Moore, Tex.Civ.App., 175 S.W.2d 433, 434, points 3–6. See also Farmers Seed & Gin Co., Inc. v. Brooks, 125 Tex. 234, 81 S.W.2d 675, points 1–3, at page 677, opinion adopted by S.Ct. For exceptions to the general rule, where the quantum of proof must be greater, see: Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91; Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63, 67. We think the pleadings and the proof bring this

cause against Manning and Medford within the rule announced by our Supreme Court in Pioneer Bldg. & Loan Ass'n v. Gray, supra.

Accordingly, the judgment of the trial court is affirmed.