IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 16, 2001

# STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. JERI FAYE LAYNE, ET AL.

**Appeal from the Juvenile Court for Grundy County**
**Nos. 3746 & 3963      Earlene Y. Speer, Judge**

---

**No. M2001-00652-COA-R3-JV - Filed February 1, 2002**

---

This is a termination of parental rights case involving four small children. The parental rights of the biological father, Carl Edward Layne, were terminated after default judgment was entered against him and such termination has not been appealed. The parental rights of the biological mother, Jeri Fay Layne, were terminated by the Juvenile Court of Grundy County after a hearing based upon statutory grounds of abandonment, failure to substantially comply with the permanency plan and persistent, unremedied conditions. Mrs. Layne timely appealed and we affirm the judgment of the Juvenile Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

William R. Anderson, III, Altamont, Tennessee, for the appellants, Jeri Fay Layne and Carl Edward Layne.

Paul G. Summers, Attorney General & Reporter; Elizabeth C. Driver, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

## OPINION

Carl Edward Layne and wife Jeri Fay Lane are the parents of four minor children, Timothy Edward born May 10, 1994; Brittany Fay born February 2, 1996; Damien Edward born March 14, 1997, and Carl Edward born March 15, 1998.

The State of Tennessee Department of Children's Services worked with the parents concerning the three older children before filing a petition for temporary custody on June 3, 1997, less than three months after the birth of the third child, Damien Edward Layne. This petition alleged in part: "The natural father of said children, Carl Layne, is incarcerated. The natural mother is

unemployed and lacks the ability and resources to provide properly for said children. The mother and children have been living in a car allegedly for several weeks. Said children have been denied adequate nourishment and are in need of a stable environment. DCS has taken all reasonable and necessary steps to prevent removal." Custody was immediately vested in the Department of Children's Services and the three children were placed in the foster care of Virginia Scott where they continue to reside.

On March 15, 1998, Mrs. Layne gave birth to the fourth child, Carl Edward Layne, and on December 1, 1998, Department of Children's Services filed a petition for temporary custody asserting in part:

> The natural mother of said child Jeri Fay Layne, left said child with a casual acquaintance on November 29, 1998, allegedly for a few hours. Thereafter the natural mother could not be located the acquaintance took said child to another woman in turn took the said child to the Grundy County Police Department. Said child was left without sufficient food or clothing. The natural father of the child is Carl Edward Layne who resides in Altamont, TN and whose circumstances are unknown to the Department of Children's Services at present. The Department of Children's Services has taken all responsible and necessary steps to prevent removal.

The juvenile court granted custody of Carl Edward Layne to the Department of Children's Services on December 1, 1998 and he was placed in the foster home of Pamela Church where he continues to reside.

On June 18, 1997, following a permanency planning hearing, the three older children were placed under permanency plans with the goal of reunification with the parents. In these permanency plans, a number of responsibilities were placed upon the parents including locating suitable housing, applying for food stamps and other food programs, obtaining psychological evaluations to include I.Q. testing and recommendations regarding parenting strengths and weaknesses, participating in a work training program, participating in parenting classes to learn how to meet the children's needs and demonstrating the ability to recognize the needs of the children during visitation, and calling the case manager to schedule visitation of at least four hours per month.

Following the grant of custody to the Department of Children's Services of the fourth child, Carl Edward Layne, a similar permanency plan was entered into as to this child on December 18, 1998.

On February 29, 2000, the Department of Children's Services filed a petition to terminate the parental rights of both parents as to all four children, pursuant to Tennessee Code Annotated sections 37-1-147, 37-1-113, 37-2-403(a)(2) and 36-1-117. This petition alleged:

> That the subject child, Timothy Edward Layne was born May 10, 1994 to Jeri Layne and Carl Layne in Franklin County, Tennessee. The subject child Brittany Fay Lane was born February 4, 1996 to Jeri Layne and Carl Layne in Franklin

County, Tennessee. The child Damien Edward Layne was born March 14, 1997 to Jeri and Carl Layne in Franklin County, Tennessee. The child Carl Edward Layne, Jr. was born to Jeri Layne and Carl Layne on March 15, 1998 in Franklin County, Tennessee. That there are no other persons entitled to notice pursuant to T.C.A. §36-1-117 of this proceeding or of any subsequent adoption proceeding with regard to the subject children. The putative father registry maintained by the Department was consulted within three (3) working days of the filing of this petition and there are no additional claims on the registry to the paternity of the children. Said response is attached hereto as Exhibit A, made a part of this Petition and incorporated herein by reference.

That the temporary custody of the subject children was awarded to the State of Tennessee, Department of Children's Services on June 7, 1997 as to the three oldest child[ren]. Temporary custody of Carl Edward Layne, Jr. was awarded to the State of Tennessee on December 1, 1998 and they have been in foster care continuously since that date.

That the children were found to be dependent and neglected by this Court and was [sic] placed in the custody of the Department; the Department made reasonable efforts to prevent removal or the child's [sic] situation prevented reasonable efforts from being made prior to removal; the Department has made reasonable efforts to assist Respondents, Jeri Layne and Carl Layne, to establish a suitable home for the children for a period of four (4) months following the removal, but Respondents made no reasonable efforts to provide a suitable home and demonstrated a lack of concern for the child [sic] to such a degree that it appears unlikely that they will be able to provide a suitable home for the children at an early date;

The children have been removed by order of a court for a period of six (6) months. The conditions which led to the removal still persist or other conditions persist which in all probability would cause the children to be subjected to further abuse and neglect and which, therefore, prevent the children's return to the care of either Respondent. There is little likelihood that these conditions will be remedied at an early date so that the children can be returned to either Respondent in the near future. Specifically, Respondents, Jeri and Carl Layne were homeless at the time of the children's coming into custody. They have continued to have housing problems.

The children were malnourished and had several bite and burn marks on their bodies. Each child has special needs that require constant attention. Neither parent is willing or able to care for the needs of these children.

Jeri Layne and Carl Layne have not visited their children since September 23, 1999. They have had no contact with their children or the Department of Children's Services since that date.

3

The continuation of the legal parent and child relationship greatly diminishes the child's [sic] chances of early integration into a stable and permanent home. The likelihood that a successful adoptive placement can be found for any child in foster care diminishes as the child grows older and as the amount of time spent in foster care lengthens;

Despite frequent explanations of the statement of responsibilities set out in periodic foster care plans prepared for and signed by Respondents, they failed to comply in a substantial manner with those reasonable responsibilities related to remedying the conditions which necessitate foster care placement.

That it is in the best interest of the subject children and the public that all of the parental rights of the Respondents to the subject children be forever terminated and that the complete custody, control and guardianship of said children be awarded to the State of Tennessee, Department of Children's Services, appointing the Regional Administrator for Children's Services in Grundy County or his/her successor in office, as the guardian of [these children] with the right to place said child for adoption and to consent to such adoption in loco parents.

By order of May 12, 2000, the juvenile court after default judgment, terminated the parental rights of the biological father Carl Edward Layne.

On May 17, 2000, attorney Jay Blevins was appointed guardian ad litem for the four minor children.

On June 19, 2000, the petition for termination of parental rights as to all of the children was heard before the Juvenile Court of Grundy County resulting in a final judgment entered July 12, 2000 providing:

This cause came on to be heard on the 19th day of June 2000 before the Honorable Earlene Speer, Judge of the Juvenile Court of Grundy County, Tennessee, upon the sworn petition of the State of Tennessee, Department of Children's Services. Appearing before the Court were Jeri Fay Layne, mother of said children; William Riley Anderson, counsel for the Respondents; Sandy Spies, Case manager II, Department of Children's Services, Grundy County office; Dorothy D. Buck, counsel for the Department of Children's Services and all other proper parties. Respondent Carl Layne had failed to appear and this Court has entered a decree terminating his parental rights on May 17, 2000. From the testimony of witness, the evidence presented at trial, the argument of counsel and the record as a whole this Court finds by clear and convincing evidence the following:

1.    That the petition filed by the State of Tennessee, Department of Children's Services, is well taken and should be sustained and relief granted thereunder for the causes as therein stated in that the

4

subject children have been in the custody of Petitioner for at least six (6) months;

2. That the Respondent has abandoned said children as defined in T.C.A. 36-1-102 and 37-2-402(10)(A) in that for a period of four (4) consecutive months next preceding the filing of the petition in this cause, the Respondent willfully failed to visit or engage in more than token visitation.

3. That the Respondent failed for a period of four months after the removal of her children to make reasonable efforts to provide a suitable home and demonstrated a lack of concern for the children to such a degree that it appears unlikely that she will be able to provide a suitable home for her children at an early date. Specifically this Court finds that the children have been in the custody of the Department of Children's Services or more than two years and the conditions that led to say children's removal still persist pursuant to T.C.A. 36-1-113(g)(3)(A).

4. That pursuant to T.C.A. 36-1-113(g)(2) and 37-2-(403)(a)(2)(C), Respondent has failed to substantially comply with the responsibilities and tasks in the permanency plan signed by her and ratified by this Court. The Respondent did not present clear and convincing proof that she had complied with any of her stated responsibilities.

5. Defense counsel raised in argument the issue of notification to counsel of proceedings and the specific appointment of counsel. Counsel argued that lack of notice and contact to him by Department personnel impaired his ability to properly advise his client. This Court finds that the error made, if at all, was harmless and did not affect any due process rights his client may have been entitled to and she had competent and adequate representation during these proceedings. This Court also finds that the duty of notification belongs to the client and not the Petitioner.

6. The Court further considered the best interest of the children pursuant to T.C.A. 36-1-113(I) and finds that the Respondent has not made and [sic] adjustment of circumstances, conduct and conditions which would make it safe and in the children's best interest to be in the home of the Respondent; that the Respondent has not maintained any regular visitation with the children and has not bonded with them in order to establish a meaningful relationship. The Court further considered and finds that any change in the physical environment and

caretakers is likely to have a detrimental effect on the children in that they are all special needs children and the Respondent has not demonstrated an ability to understand their needs and her own emotional and intellectual limitations prevent her from effectively providing a safe, stable and proper environment for the children.

7.      It is therefore, for the best interest of said children and the public that all the parental rights of the Respondents to the said children be forever terminated and that the complete custody, control and guardianship of the said children should now be awarded to the State of Tennessee, Department of Children's Services with the right to place said children for adoption and to consent to any adoption in loco parentis.

This decree will have the effect of terminating all the rights, responsibilities, and obligations of the Respondent to the said children and of the said children to the Respondent arising from the parental relationship, and the Respondent Jeri Fay Layne is not hereinafter entitled to notice of proceedings for the adoption of said children by another nor have any right to object to such adoption or otherwise to participate in such proceedings, or hereafter, at anytime, to have any relationship, legal or otherwise, with said children.

IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED:

That all of the parental rights of the Respondent Jeri Fay Layne as to Timothy Edward Layne, Brittany Fay Layne, Damien Edward Layne and Carl Edward Layne, Jr. be forever terminated and the complete custody, control and guardianship of the said children be and the same is hereby awarded to the State of Tennessee, Department of Children's Services for Grundy County or his/her successor in office, as the guardian of Timothy Edward Layne, Brittany Fay Lane, Damien Edward Layne and Carl Edward Layne, Jr., with the right to place the said children for adoption and to consent to such adoption in loco parentis.

Jeri Fay Layne timely appealed on August 10, 2000.

The first issue on appeal is whether failure to notify counsel for the mother of Foster Care Review Board hearings violated the mother's right to due process. Specifically, the appellant claims that her counsel was not provided with notice of the February 18, 1999 and the September 23, 1999 Foster Care Review Board proceedings and that the findings of the Foster Care Review Board in these hearings were not provided to her counsel. While the record indicates that the argument of the appellant is factually correct, it does not follow that such failures of the petitioners in any way involved due process. The Foster Care Review Board has no authority to change the goal of the permanency plan or to take any final action which affects the rights of a parent. The Board may only

make recommendations to the juvenile court. This limited authority of the Foster Care Review Board is established by Tennessee Code Annotated section 37-2-406 and the results of any such review by the Board are simply recommendations to the juvenile court judge. Tenn. Code Ann. §37-2-406(c)(1)(A).

The right to counsel in cases involving abuse and neglect is governed by Tennessee Code Annotated section 37-1-150(f)(1) and Tennessee Rule of Juvenile Procedure 39(f)(2), along with Tennessee Supreme Court Rule 13(d)(7). These provisions create a statutory right to counsel for the parents in a proceeding that could result in finding the child dependent or neglected or in which there is a petition for termination of parental rights pending. The Foster Care Review Board has no authority to find a child dependent or neglected nor does a petition to terminate parental rights address itself to the Foster Care Review Board. Moreover, the record indicates that Mrs. Layne was present and participating in the September 23, 1999 Foster Care Review Board meeting and that Mrs. Spies, the DCS case worker, went over with her the parents' responsibilities in the permanency plan. Mrs. Layne was obviously aware of the meeting but failed to notify her attorney or have him present. While it might have been better that counsel for Mrs. Layne be notified and be present at such Foster Care Review Board hearings, neither due process nor statute makes notice to her attorney mandatory, and the failure to notify him of the Foster Care Review Board meetings of February 18, 1999 and September 23, 1999 does not constitute reversible error.

The decisive issue before this Court is whether or not the trial court erred in terminating the parental rights of Jeri Fay Layne.

Tennessee Code Annotated section 36-1-113(c)(1) makes it clear that the statutory grounds for termination of parental rights must be factually established under a "clear and convincing evidence" standard.

> This court recently attempted to describe the clear and convincing evidence standard, explaining that
>
>> [a]lthough it does not require as much certainty as the "beyond a reasonable doubt" standard, the "clear and convincing evidence" standard is more exacting than the preponderance of the evidence" standard. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. App. 1995); *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn. App. 1992). In order to be clear and convincing, evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992); *O'Daniel v. Messier*, 905 S.W.2d at 188. Such evidence should produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established. *O'Daniel v. Messier*, 905 S.W.2d at 188; *Wiltcher v. Bradley*, 708 S.W.2d 407, 411 (Tenn. App. 1985). In contrast to the preponderance of the evidence

7

standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. *Lettner v. Plummer*, 559 S.W.2d 785, 787 (Tenn. 1977); *Goldsmith v. Roberts*, 622 S.W.2d 483, 441 (Tenn. App. 1981); *Brandon v. Wright*, 838 S.W.2d at 536.

*M.C.G.*, 1999 WL 332729, at *6 (quoting *Bingham v. Knipp,* No. 02A01-9803-CH-00083, 1999 WL 86985, at *3 (Tenn. Ct. App. Feb. 23, 1999) (*no perm. app. filed*)).

*In Re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000).

This Court has held that a "clear, cogent and convincing evidence" standard cannot co-exist with a "preponderance of the evidence" standard on the issue of persuasion. *Estate of Acuff v. O'Linger*, 56 S.W.3d 527, 535 (Tenn. Ct. App. 2001). Whether the "clear, cogent and convincing evidence" standard is imposed by statute or under the common law and whether the trial is by jury or the trial judge sitting without a jury, appellate courts are required to determine from the record whether or not the party bearing the burden of proof has established that his factual contentions are "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 315, 104 S.Ct. 2433, 2437-38, 81 L.Ed.2d 247 (1984); *Estate of Acuff v. O'Linger*, 56 S.W.3d 527, 533-537 (Tenn. Ct. App. 2001); *Shell v. Law*, 935 S.W.2d 402, 405 (Tenn. Ct. App. 1996).

It is likewise correct to observe the established rule that: "In reviewing termination decisions, this court has recognized that the existence of any one of the statutory bases will support a termination of parental rights." *In re C.W.W.*, 37 S.W.3d 467, 473-74 (Tenn. Ct. App. 2000)(citing *In re M.C.G.*, No. 01A01-9809-JV-00461, 1999 WL 332729, at *5 (Tenn. Ct. App. May 26, 1999) (*no perm. app. filed*); *Department of Children's Servs. v. Darr*, No. 03A01-9706-JV-00213, 1998 WL 128874, at *3 (Tenn. Ct. App. Mar. 24, 1998) (*no perm. app. filed*).

The first basis on which the trial court terminated the parental rights of Jeri Fay Layne was pursuant to Tennessee Code Annotated section 36-1-113(g)(3)(A) providing:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
>
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
>
> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe,

stable and permanent home.

The evidence supporting this basis for termination is overwhelming. First of all, it is undisputed that all of the children have been in the custody of the Department of Children's Services for more than six months. When the children were taken from the custody of the mother and placed in custody of the Department of Children's Services, the family was homeless and the children malnourished. At the time of the hearing on the termination petition, Mrs. Layne was separated from her husband and living in the home of another man where she occupied one bedroom and had access to his bathroom and kitchen. She has not been able to maintain stable housing and although she has worked most of the time since the children have been in the Department of Children's Services' custody. She has gone from job to job with no stability in her employment. Granted, she had little support in her efforts to improve from her husband or from any of her limited family, but while the children have remained in DCS custody she has failed to improve her life to the point that she could properly care for the children. She has no safe and stable home and no ability to provide for adequate financial support for her and for her children. There is no likelihood that the conditions existing will be remedied at an early date. Even after being involved with the Department of Children's Services for six years, Mrs. Layne is unable to demonstrate that she could care for the children. By her own admission, she failed to attend parenting classes and never obtained a psychological evaluation. Finally, continuation of the parent/child relationship between Mrs. Layne and the children undoubtedly prevents the children from integrating into a permanent home. Thus, the factors involved in Tennessee Code Annotated section 36-1-113(g)(3)(A) have been established as "highly probable" under the statutory clear and convincing evidence rule.

The evidence further shows that Mrs. Layne has not complied with her responsibilities under the permanency plan or plan of care. T.C.A. § 36-1-113(g)(2).

According to the permanency plan, Mrs. Layne was to (1) apply for public housing or locating other suitable housing, (2) advise the case manager of any changes in status or location, (3) keep all medications, cleaning supplies and other harmful products out of the reach of the children, (4) make efforts to address and control insect and pest infestation, (5) enroll the children with a doctor or dentist, (6) establish a plan for emergency treatment and be able to verbalize that plan, (7) apply for food stamps or other food programs, (8) maintain at least a two-day supply of food in the home, (9) obtain a psychological evaluation that includes I.Q. testing and recommendations regarding parenting strengths and weaknesses, (10) participate in a work training program, (11) participate in parenting care classes to learn how to meet the children's needs and demonstrate the ability to recognize and meet the children's needs during visitation, and (12) call case manager and schedule visitation and visit at least four hours per month.

At the time of trial three years after the original permanency plan, she had, for one reason or another, failed to meet her responsibilities. She had not attended parenting classes in the manner required and she had not obtained a psychological evaluation. She failed to keep in contact with her case manager and failed to demonstrate the ability to recognize and meet the needs of the children. By clear and convincing evidence the trial court's termination of parental rights on the basis of failure to comply with the permanency plan was proper.

9

The trial court further found that by clear and convincing evidence Mrs. Layne had abandoned her children. A court in Tennessee may terminate parental rights when a child has been abandoned by a parent. Abandonment by statutory definition occurs when:

> (A)(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;
>
> (C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;
>
> (E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;

Tenn. Code Ann. § 36-1-102(1)(A)(i), (C) and (E).

Considering the evidence as a whole, abandonment has not been established in this case by clear and convincing evidence. Appellant attempted to visit with her children and of sixteen scheduled visitations in the three years after the children were taken from her custody, she missed only two visits. Her case worker testified that it was difficult to set up a regular visitation schedule with four children, all of whom were in counseling and have many other appointments to attend.

While her conduct in attempting visitation and in paying child support left much to be desired, the evidence does not establish that it was "highly probable" that her failure to visit and pay child support involved willfulness or choice. *See In re Swanson*, 2 S.W.3d 180 (Tenn. 1999); *see also In re Menard*, 29 S.W.3d 870 (Tenn. Ct. App. 2000).

The judgment of the trial court terminating the parental rights of Jeri Fay Layne is affirmed on the basis of her failure to remedy conditions in her life and her failure to substantially comply with the permanency plan.

Costs of the cause are assessed against Jeri Fay Layne.

_____
WILLIAM B. CAIN, JUDGE